UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WILLIAM BRENNER, JACALYN
BRENNER

       Plaintiffs,    **MEMORANDUM & ORDER**
 -against-         CV 10-4857 (DRH) (AKT)

SIMON BRENNER

       Defendant.
--------------------------------------------------------X

**APPEARANCES:**

**Robinson & Cole LLP**
Attorneys for Plaintiffs
1055 Washington Boulevard
Stamford, Connecticut 06901
By: Brian James Wheelin, Esq.

885 Third Avenue, 28th Floor
New York, New York 10022
By: Melissa Faith Savage Shiffman, Esq.


**Salamon, Gruber, Blaymore & Strenger, P.C.**
Attorneys for Defendant
97 Powerhouse Road
Suite 102
Roslyn Heights, New York 11577
By: Sanford Strenger, Esq.

**HURLEY, Senior District Judge:**

  Plaintiffs William Brenner ("William") and Jacalyn Brenner ("Jacalyn") (collectively, "plaintiffs") filed the present action against Simon Brenner ("Simon" or "defendant") seeking to recover damages stemming from defendant's alleged breach of contract. Presently before the Court is defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendant's motion is granted.

## BACKGROUND

The following facts are taken from the Complaint, including the exhibits attached thereto,[1] and are presumed true for purposes of the instant motion.

William and Jacalyn are married and currently reside in Hackensack, New Jersey. Simon, who currently resides in Roslyn, New York, is William's uncle. Dean Brenner ("Dean") is Simon's son and William's cousin.

From the late 1970s until late 1997, William, Simon, and Dean, were part owners of Delta Trading Corporation ("Delta"), a corporation located at 220 West 30th Street, New York, New York 10001. By approximately November 1997, Simon no longer possessed an ownership interest in Delta. As of the beginning of 1998, Dean owned 72.5% of Delta and William owned the remaining 27.5%. At all relevant times, although Simon no longer had an ownership interest in Delta, he "remained active in the business of Delta and served as an officer of Delta." (Compl. ¶ 6.)

In or around December 2001, the U.S. Small Business Administration ("SBA") made a loan, No. 50313140-00 ("SBA Loan"), to Delta. The SBA Loan was secured by a mortgage on plaintiffs' home in Old Bethpage, New York ("Old Bethpage Home"). William and Jacalyn "did not want to pledge their home to secure the SBA Loan," but were "induce[d] . . . to provide such

---

[1] The Court may properly rely on material attached to the Complaint when deciding the instant motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Pleadings," for purposes of a motion to dismiss under Rule 12(b)(6) "include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation marks omitted).

security for the SBA Loan" when Simon "personally assured them that he would guaranty the SBA Loan and pay off the SBA Loan if need be." (*Id.* ¶ 9.)

Plaintiffs allege that in a letter addressed to William, dated June 9, 2003, (the "Letter"), Simon "agreed in writing to indemnify and hold Plaintiffs harmless with respect to the SBA Loan [ ]." (Compl. ¶ 10.) The Letter stated as follows:

> I am writing to confirm our verbal discussion in which I told you that I would ensure that there would be no foreclosure on the second mortgage that you gave to the United States Small Business Administration in connection with a loan to Delta Trading Corp. (Number EIDL50313140-00). In this connection, in the event Delta Trading Corp. does not pay its obligation and there is an attempt on the part of the United States Small Business Administration to enforce its mortgage, then I will indemnify and hold you harmless from any possible action, including but not limited to paying the balance if that becomes necessary.

(*Id.*, Ex. A.)

According to plaintiffs, "[a]t various times both prior to and subsequent to the execution of [the Letter]," Simon "assured William [ ] and Jacalyn [ ] that he would bear full responsibility for the SBA Loan and would indemnify and hold William and Jacalyn harmless in the event of any action on the part of the SBA to seek repayment through the second mortgage on the Old Bethpage Home." (Compl. ¶ 11.)

In or around mid-2004, Delta, heavily indebted and facing lawsuits, ceased operations. Thereafter, a new company, DTC Trading LLC ("DTC"), was formed. While the Complaint does not make clear who owned DTC, plaintiffs allege that William did not acquire an ownership interest. He did, however, became an employee at DTC and worked there until 2009. "DTC

3

initially operated at the same address as Delta" and its "business was similar to that of Delta." (*Id*. ¶ 7.)

Plaintiffs recently sold the Old Bethpage Home, and the SBA Loan was paid off in full from the proceeds of the sale. (*Id*. ¶ 12.) Plaintiffs allege that they "acted in good faith and in reasonable reliance on [the Letter] and the repeated assurances of Simon Brenner that he would indemnify and hold Plaintiffs harmless." (*Id*.) Upon the sale of the Old Bethpage Home, plaintiffs paid the SBA a total of $124,544.12 in full satisfaction of the SBA Loan (the "Payoff"). (*Id*. ¶ 13 & Ex B.)

On or about July 22, 2010, plaintiffs demanded in writing that Simon indemnify them in the amount of $124,544.12. (*Id*. ¶ 14 & Ex. C.) Simon refused to indemnify and reimburse plaintiffs.

Plaintiffs filed the instant action on October 22, 2010. The Complaint contains four causes of action: Count I seeks damages in the amount of $124,544.12 for defendant's alleged breach of contract, while Counts II, III and IV seek recovery under the quasi-contract theories of unjust enrichment, promissory estoppel and equitable estoppel, respectively.

*DISCUSSION*

## I. *Motion to Dismiss Legal Standard*

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II.  *Defendant's Motion to Dismiss Plaintiffs' Breach of Contract Claim is Granted*

### A.  *The Parties' Contentions*

The Complaint identifies the June 9, 2003 Letter as an "Agreement." (Compl. ¶ 10.) In Count I of the Complaint, plaintiffs allege that Simon "breached the Agreement with Plaintiffs by failing to pay Plaintiffs the Payoff amount of $124,544.12 upon due demand." (*Id.* ¶ 16.) In support of his motion to dismiss Count I, defendant argues that the text of the Letter is unambiguous on its face and does not support plaintiffs' allegation that Simon agreed to "blanket indemnify" them with respect to the SBA Loan. (Def.'s Mem. at 7.)[2] According to defendant,

---

[2]  Defendant assumes *arguendo* that the Letter was "supported by valid consideration" and was "intended to cover both Jacalyn and William Brenner," but "does not concede" either of these points. (*See* Def.'s Mem. at 6-7 & n.1.)

"[no]where in the four corners of the June 9, 2003 letter is there the blanket indemnity claimed by Plaintiffs to exist in that document." (*Id.*) To the contrary, defendant asserts that pursuant to the "unambiguous wording" of the Letter, "no obligation would arise until the SBA commenced a foreclosure, or otherwise sought enforcement of the loan based upon nonpayment of the SBA Loan." (*Id*. at 9.) Defendant contends that plaintiffs "do[] not plead that the conditions cited in the June 9, 2003 letter arose, i.e., that the SBA had commenced a foreclosure or in any way sought to enforce its mortgage." (*Id.* at 8.) Rather, according to defendant, the Complaint avers that "the loan was current and that timely monthly payments were made each month . . . until [the Loan's] voluntary pay off by Jacalyn in June of 2010." (*Id*.)

Under New York law, "[t]o recover for a breach of contract, Plaintiff must establish: (1) the existence of an agreement; (2) the plaintiff's adequate performance of that agreement; (3) a breach by the defendant; and (4) damages." *Friedman v. Schwartz*, 2010 WL 3937304, at *2 (E.D.N.Y. Sept. 30, 2010) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). While defendant focuses on the "breach" element of plaintiffs' first cause of action, plaintiffs dispute defendant's characterization of what the alleged agreement was. Plaintiffs assert that, despite defining the Letter as the "Agreement" that was breached, "[t]he Complaint does not allege that the June 9, 2003 Letter is a fully integrated agreement," but that it was simply "an acknowledgment of Simon Brenner's multiple oral promises to bear full responsibility for the Loan." (Pls.' Opp'n at 7.) Plaintiffs further assert that Simon's alleged "oral promises were not conditioned upon the happening of a foreclosure proceeding." (*Id.*)

7

Defendant counters that plaintiffs are improperly attempting to "expand their pleading" by claiming in their legal brief that "what they really mean[t] to plead is a breach of oral *and* written promises." (Reply Mem. at 7) (emphasis added). Defendant asserts, however, that even if plaintiffs' breach of contract claim was based upon both Simon's alleged oral promises and the Letter, Count I would still fail because none of Simon's alleged promises to repay the Payoff amount (whether oral or as confirmed in the Letter) were unconditional. (*Id.* at 3.) Instead, according to defendant, each of the alleged promises was conditioned upon the happening of one of the following events: "any enforcement action by the SBA, [a] declaration of default by the SBA or arrearage in payment of the Loan." (*Id.*) Defendant argues that because the Complaint does not aver that any of these events occurred, plaintiffs have failed to show that Simon's obligation to repay the Payoff was ever triggered. (*Id.*)

### B. *Plaintiffs Have Failed to Allege That Simon Made an Unconditional Promise to Repay the Payoff Amount*

It is well-settled that in examining the sufficiency of the Complaint, the allegations in the pleading – not the arguments advanced by counsel – control. *See Shah v. Helen Hayes Hosp.*, 252 Fed.Appx. 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *Siti-Sites.com, Inc. v. Verizon Commc'ns, Inc.*, 2010 WL 5392927, at *5 (S.D.N.Y. Dec. 29, 2010) ("A party may not amend its complaint, however, through statements made in its motion papers."), *aff'd*, 2011 WL 2618884 (2d Cir. July 5, 2011). Plaintiffs allege that defendant breached the "Agreement," which term is defined as the June 9, 2003 Letter. (*See* Compl. ¶¶ 10, 16.) Clearly the Letter does not contain an unconditional

promise by Simon to repay the Payoff. Rather, the Letter specifically conditions Simon's obligation as follows: "[I]n the event Delta Trading Corp. does not pay its obligation and there is an attempt on the part of the [SBA] to enforce its mortgage, then I will indemnify and hold you harmless . . . ." (Compl, Ex. A.) Because plaintiffs do not allege the occurrence of either of the conditions set forth in the Letter, i.e., that Delta did not pay the SBA Loan or that the SBA attempted to enforce its mortgage, the Letter alone cannot sustain plaintiffs' breach of contract claim.

While plaintiffs have alleged that the Letter constitutes the agreement between the parties, however, they have not specifically alleged that the Letter sets forth the entire parameters of the parties' agreement. To the contrary, plaintiffs rely on oral statements allegedly made by Simon both prior and subsequent to June 9, 2003 as further evidence of the contents of the agreement between the parties. This implicates the parol evidence rule, which has been stated as follows:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Garza v. Marine Trans. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) (citation omitted). When, however, a writing "is not integrated, the parol evidence rule does not apply and extrinsic evidence of a separate oral agreement can be considered." *Starter Corp. v. Converse Inc.*, 170 F.3d 286, 295 (2d Cir. 1999) (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir. 1995)).

Where, as here, "a contract lacks an express integration clause the district court must determine whether the parties intended their agreement to be an integrated contract by reading

9

the writing in light of the surrounding circumstances." *Id.* at 295 (internal quotation marks omitted). In making this determination, the Court may consider the following factors:

> [W]hether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental . . . .

*Arias-Zeballos v. Tan*, 2006 WL 3075528, at **7-8 (S.D.N.Y. Oct. 26, 2006) (quoting *Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 214 (S.D.N.Y. 2003)). In this case, however, the Court need not determine whether the Letter constituted an integrated agreement. Even assuming *arguendo* that the Letter was not an integrated agreement, and, thus, the parol evidence rule did not preclude consideration of the alleged oral promises, plaintiffs' claim would still fail.

The Complaint contains two separate allegations regarding the oral promises made by Simon. (*See* Pl.'s Opp'n at 5 (citing Compl. ¶¶ 9, 11).) First, plaintiffs allege that "Simon Brenner personally assured [Plaintiffs] that he would guarantee the SBA Loan and pay off the SBA Loan if need be." (Compl. ¶ 9.) Defendant asserts that the qualifier "if need be" cannot plausibly be read to include plaintiffs' "voluntary desire to no longer be guarantors of the Loan, or [to] provide security for the repayment of the Loan." (Reply Mem. at 3.) The Court agrees, particularly given that the Letter, which plaintiffs now argue served as a written confirmation of this alleged oral promise, contains a clear condition on Simon's obligation to repay the Payoff. *See Navigant Consulting, Inc. v. Kostakis*, 2007 WL 2907330, at *7 (E.D.N.Y. Oct. 4, 2007)

(noting that "parol evidence of additional contract terms may be admitted to complete the agreement, *so long as the additional terms do not contradict the written terms*") (emphasis added).

Second, plaintiffs allege that "[a]t various times both prior and subsequent to the execution of [the Letter], Simon Brenner assured William Brenner and Jacalyn Brenner that he would bear full responsibility for the SBA Loan and would indemnify and hold William and Jacalyn harmless *in the event of* any action on the part of the SBA to seek repayment through the second mortgage on the Old Bethpage Home." (Compl. ¶ 11 (emphasis added).) This alleged oral promise, however, clearly conditioned Simon's obligation to repay the Payoff on an attempt by the SBA to foreclose on the mortgage.

In sum, plaintiffs have failed to allege that Simon made an unconditional promise to repay the Payoff upon plaintiffs' demand. Rather, the allegations in the Complaint set forth that any obligation by Simon to repay plaintiffs was conditioned on the SBA attempting to foreclose on the mortgage of the Old Bethpage Home. Because plaintiffs have not alleged that the SBA attempted to enforce its mortgage, plaintiffs have failed to demonstrate that Simon's obligation to repay plaintiffs was triggered upon the sale of the Old Bethpage Home. Therefore, plaintiffs have not sufficiently alleged that defendant breached any agreement and defendant's motion to dismiss plaintiffs' first cause of action is granted.

### III. *Defendant's Motion to Dismiss Plaintiffs' Unjust Enrichment Claim is Granted*

In Count II of the Complaint, plaintiffs assert a cause of action sounding in unjust enrichment. Unjust enrichment is a "quasi-contractual remedy that the law provides where a contractual relationship has legally failed." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 210

(S.D.N.Y. 2008) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Dayton Superior Corp. v. Marjam Supply Co.*, 2011 WL 990300, at *9 (E.D.N.Y. Feb. 22, 2011) (quoting *Beth Israel*, 448 F.3d at 586) (internal quotation marks omitted).

"The 'essence' of [an unjust enrichment] claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 685 N.Y.S.2d 381, 381 (4th Dep't 1999)). To support an unjust enrichment claim a plaintiff must "establish [a] specific and direct benefit" moving from the plaintiff to the defendant. *Id.*; *see also M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("It is not sufficient for defendant to receive some indirect benefit – the benefit received must be 'specific and direct' to support an unjust enrichment claim.")

Defendant asserts[3] that plaintiffs have failed to allege an essential element of an unjust enrichment claim in that they have failed to specifically allege "how Simon, a non-shareholder of [Delta,] which . . .had been out of business for 6 years, obtained any benefit by Jacalyn's voluntary act of paying off Delta's SBA Loan." (Def.'s Mem. at 10.) Plaintiffs argue that Simon clearly benefitted from the Payoff, given that "Simon's son, Dean Brenner, owned 72.5% of Delta Trading Corporation, and that Simon remained active in the business of Delta and served as an officer of Delta." (Pls.' Opp'n at 12.) This allegation, without more, is simply too

---

[3] Because the Court has dismissed plaintiffs' claim for breach of contract, it need not address defendant's argument that plaintiffs may not simultaneously maintain a claim for breach of contract and a quasi-contract claim for unjust enrichment. (*See* Def.'s Mem. at 10-11.)

attenuated to show that Simon received a direct benefit from plaintiffs' paying off the SBA Loan. *See M + J Savitt, Inc.*, 2009 WL 691278 at *10 (finding that when plaintiff lent company money, the defendant owner of the company was not directly benefitted so as to sustain unjust enrichment claim; complaint alleged that loan went directly to company and not to company owner).

Plaintiffs also argue that the fact that Simon, "who signed the Loan as President of Delta, did not pay off the Loan is, in and of itself, a benefit." (Pls.' Opp'n at 12.) The Court notes, however, that the Complaint contains no allegation that Simon signed the SBA Loan in the capacity of President of Delta. Rather, this information has been put before the Court by defendant, who attached a copy of the SBA Loan Note to its attorney's affidavit. (*See* Aff. of Sanford Strenger, dated Dec. 21, 2010, Ex. D.) Moreover, plaintiffs have provided no citations to legal authority to support their position and have not provided this Court with an explanation of why it should consider this factual allegation that is not pled in the Complaint. Thus, the Court declines to consider this argument in connection with the present motion.[4]

Accordingly, that portion of defendant's motion seeking dismissal of Count II of the Complaint is granted, and plaintiffs' unjust enrichment claim is dismissed.

### IV. *Defendant's Motion to Dismiss Plaintiffs' Promissory Estoppel Claim is Granted*

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye*, 202

---

[4] As noted below, plaintiffs will be given an opportunity to request leave to amend their Complaint. To the extent they wish to expand upon this argument, their pre-motion conference letter would be an appropriate avenue to do so.

F.3d at 615 (citing *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)).

Plaintiffs contend that Simon made "a clear and unambiguous promise" to repay the Payoff, and that they reasonably relied on this promise to their detriment. (*See* Pls.' Opp'n at 13 (quoting Compl. ¶¶ 26-27).) As set forth above, however, plaintiffs have failed to plead that any promise made by Simon was unconditional. In fact, plaintiffs have alleged that Simon's promise to repay plaintiffs was conditioned on the happening of, *inter alia*, a foreclosure proceeding. Because plaintiffs have not alleged that such a foreclosure proceeding was ever commenced, Simon's obligation to repay them was never triggered. Therefore, plaintiffs have not sufficiently pled that they were injured as a result of their alleged reliance on Simon's promises. Accordingly, that portion of defendant's motion seeking dismissal of Count III of the Complaint is granted, and plaintiffs' promissory estoppel claim is dismissed.

## V. *Defendant's Motion to Dismiss Plaintiffs' Equitable Estoppel Claim is Granted*

In Count IV of the Complaint, plaintiffs allege that they are entitled to recovery under a theory of equitable estoppel. Equitable estoppel "is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001). "Under New York law, the elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *In re Vebeliunas*, 332 F.3d 85, 93-94 (2d Cir. 2003). "The parties asserting estoppel must show with respect to themselves: (1) lack

14

of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions." *Id.* at 94.

Defendant argues that plaintiffs have "fail[ed] to plead that Simon is seeking to enforce anything against them. . . ." (Def.'s Mem. at 14.) Defendant also contends that plaintiffs' equitable estoppel claim is barred by the applicable six year statute of limitations. (*Id*.) Plaintiffs counter that their equitable estoppel claim is not barred by the statute of limitations because the claim did not accrue until "Plaintiffs became aware or should have become aware of the alleged fraud," which was "not until Plaintiffs sold their home and Defendant refused to honor his promise . . . ." (Pls.' Opp'n at 14.)

Even assuming that plaintiffs' claim is timely, the Court finds that it is inadequately pled. In particular, plaintiffs have failed to allege that Simon's conduct "amounts to a false representation or concealment of material facts." *See In re Vebeliunas*, 332 F.3d at 93-94. "Statements relating to the future conduct of the party, rather than a representation concerning a past or present fact, cannot form the basis for equitable estoppel." *Longview Equity Fund, LP v. McAndrew*, 2007 WL 186769, at *5 (S.D.N.Y. Jan. 23, 2007) (quoting *Solow Mgmt. Corp. v. Hochman*, 191 A.D.2d 250, 251 (1st Dep't 1993)) (internal alterations and quotation marks omitted); *see also DePace v. Matsushita Elec. Corp. of Am.*, 2004 WL 1558312, at *9 (E.D.N.Y. July 16, 2004) (noting the difference between "claims premised on promissory estoppel," which require reliance based on a "promise[ ] or a misstatement of future intent," and claims "based on equitable estoppel," which require a misrepresentation of fact). Here, plaintiffs' allegation of Simon's false representation is based upon the alleged fact was that he "did not intend to indemnify and hold Plaintiffs harmless for paying off the SBA Loan in full." (Compl. ¶ 33.)

This is a statement relating to Simon's "future conduct," not a "representation concerning a past or present fact." *See Longview Equity*, 2007 WL 186769 at *5 (internal quotation marks omitted). Thus, plaintiffs have not adequately pled a cause of action for equitable estoppel under New York law, and defendant's motion to dismiss Count IV of the Complaint is granted.

## *CONCLUSION*

For the foregoing reasons, defendant's motion is GRANTED and the Complaint is dismissed in its entirety. Plaintiffs have not requested leave to amend their pleading in the event that defendant's motion was granted. In their motion papers, however, plaintiffs refer to facts not alleged in the Complaint, which the Court presumes were learned as discovery has progressed thus far. (*See, e.g.,* Pls.' Opp'n at 9-10, 12.) Accordingly, plaintiffs will be given one opportunity to submit a pre-motion conference letter if they wish to request leave to amend the Complaint. Such a letter, which must be submitted within thirty days of the date of this Order, shall address the extent to which an amended complaint would cure the deficiencies noted herein. If plaintiffs submit such a pre-motion conference letter, defendant may submit a response within fifteen days thereafter. If plaintiffs do not file a pre-motion conference letter within thirty days of the date of this Order, their right to do so will be deemed waived and the Clerk of the Court will be directed to close the case.

**SO ORDERED.**

Dated: September 22, 2011
   Central Islip, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　　　Senior District Judge