UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
WILLIAM BRENNER, JACALYN
BRENNER

                           Plaintiffs,                      **MEMORANDUM & ORDER**
      -against-                                                     CV 10-4857 (DRH) (AKT)

SIMON BRENNER

                           Defendant.
--------------------------------------------------------X
**APPEARANCES:**

**Robinson & Cole LLP**
Attorneys for Plaintiffs
1055 Washington Boulevard
Stamford, Connecticut 06901
By:    Brian James Wheelin, Esq.

885 Third Avenue, 28th Floor
New York, New York 10022
By:    Melissa Faith Savage Shiffman, Esq.


**Salamon, Gruber, Blaymore & Strenger, P.C.**
Attorneys for Defendant
97 Powerhouse Road
Suite 102
Roslyn Heights, New York 11577
By:    Sanford Strenger, Esq.


**HURLEY, Senior District Judge:**

       Plaintiffs William Brenner ("William") and Jacalyn Brenner ("Jacalyn") (collectively, "plaintiffs") commenced this diversity action against Simon Brenner ("Simon" or "defendant") asserting claims of breach of contract, unjust enrichment, promissory estoppel, and equitable estoppel. By Memorandum & Order dated September 22, 2011, the Court granted defendant's motion made pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and dismissed the

Complaint in its entirety. However, the Court afforded plaintiffs the opportunity to request leave to amend their pleading to cure the deficiencies noted in the Court's September 22, 2011 Memorandum & Order. Presently before the Court is plaintiffs' motion, made pursuant to Rule 15, to amend the Complaint. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Proposed Amended Complaint, including the exhibits attached thereto,[1] and are presumed true for purposes of the instant motion.

William and Jacalyn are married and currently reside in Hackensack, New Jersey. Simon, who currently resides in Roslyn, New York, is William's uncle. Non-party Dean Brenner ("Dean") is Simon's son and William's cousin.

From the late 1970s until late 1997, William, Simon, and Dean were part owners of Delta Trading Corporation ("Delta"), a corporation located at 220 West 30th Street, New York, New York. By approximately November 1997, Simon no longer possessed an ownership interest in Delta. As of the beginning of 1998, Dean owned 72.5% of Delta and William owned the remaining 27.5%. Although Simon no longer was an owner of Delta, he continued serving as its President, "receiving compensation from the Company and remaining active in its business." (Proposed Am. Compl. ¶ 7.)

---

[1] The Court may properly rely on material attached to the Proposed Amended Complaint when deciding the instant motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Pleadings "include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation marks omitted).

In December 2001, Delta began the process of seeking a loan from the United States Small Business Administration ("SBA") (the "SBA Loan"). Simon asked William if he and Jacalyn would "put up their personal residence," which was owned by Jacalyn and located in Old Bethpage, New York, as collateral for the SBA Loan. (*Id.* ¶ 8.) After plaintiffs discussed the matter amongst themselves, William informed Simon that they were not willing to do so. (*Id.* ¶ 9.)

In response, defendant "stated that he would personally take care of everything if need be and personally guarantee the SBA Loan and pay it off so as to avoid any harm whatsoever to William and Jacalyn Brenner." (*Id.* ¶ 10.) Plaintiffs assert that defendant's offer "was unconditional" and "was not subject to . . . any specific occurrence or event . . . ." (*Id.*) Plaintiffs accepted defendant's offer and, pursuant to this oral agreement between the parties (the "Agreement") and in reliance on defendant's promise, "a mortgage was executed on the Old Bethpage Home with respect to the SBA Loan." (*Id.* ¶ 11.)

On or about December 14, 2001, Simon, as President of Delta, along with William and Dean, executed a SBA Loan Note. Subsequently, Delta received proceeds from the SBA Loan in the amount of approximately $150,000. This money permitted Delta to continue operating its business.

In approximately June 2003, plaintiffs decided to refinance their Old Bethpage home. According to plaintiffs, "[a]t or around this time, Simon Brenner verbally reaffirmed the terms of the Agreement." (*Id.* ¶ 14.) Shortly thereafter, Simon sent William a letter dated June 9, 2003 (the "Letter"), which stated as follows:

3

> I am writing to confirm our verbal discussion in which I told you that I would ensure that there would be no foreclosure on the second mortgage that you gave to the United States Small Business Administration in connection with a loan to Delta Trading Corp. (Number EIDL50313140-00). In this connection, in the event Delta Trading Corp. does not pay its obligation and there is an attempt on the part of the United States Small Business Administration to enforce its mortgage, then I will indemnify and hold you harmless from any possible action, including but not limited to paying the balance if that becomes necessary.

(*Id.* ¶ 15, Ex. A.)

Plaintiffs allege that "[w]hile the Letter memorialized the facts of the Agreement, it unilaterally attempted to place conditions on Simon Brenner's unconditional obligation therein." (*Id.* ¶ 16.) Plaintiffs assert that this was the first time that Simon had attempted to place such conditions on his promise. (*Id.*) Plaintiffs did not respond and seem to assert that, by their silence, they indicated their non-approval of the proposed conditions on Simon's obligation to guarantee the SBA Loan, as articulated in the Letter. (*Id.*)

In or around mid-2004, Delta, heavily indebted and facing lawsuits, ceased operations. Thereafter, a new company, DTC Trading LLC ("DTC"), was formed. Dean was the sole owner of DTC. (*Id.* ¶ 20.) William did not acquire an ownership interest in DTC but served as an employee of DTC until 2009. Simon "was active in DTC," had "check writing authority" for DTC, and "continued receiving compensation from DTC." (*Id.* ¶¶ 18, 19.)

In early 2010, plaintiffs determined that they needed to sell their Old Bethpage home. In March 2010, Jacalyn entered into a contract of sale to sell the home. Prior to the closing, William informed the SBA that a different property would need to be substituted as security for the SBA Loan. At the direction of the SBA, William obtained certain documentation and

4

requested that Dean (on behalf of Delta) complete certain necessary forms. Dean refused to either complete the forms, pay off the SBA Loan, or secure the SBA Loan with another property or asset. The SBA insisted upon payment of the SBA Loan payoff amount ($124,544.12) before the closing, and plaintiffs paid this money. On or about July 22, 2010, plaintiffs demanded in writing that Simon indemnify and hold them harmless in the amount of the payoff. Simon refused.

The original Complaint in this action, which was filed on October 22, 2010, asserted claims sounding in breach of contract, unjust enrichment, promissory estoppel, and equitable estoppel. By Memorandum & Order dated September 22, 2011, the Court dismissed the Complaint in its entirety upon defendant's Rule 12(b)(6) motion to dismiss. The Proposed Amended Complaint asserts claims for breach of contract, unjust enrichment, and promissory estoppel.

### *DISCUSSION*

### *I.     Legal Standard*

Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). A motion to amend may be denied, however, upon a showing of the futility of the proposed amendment. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). "[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009).

5

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.     *Plaintiffs' Breach of Contract Claim*

### A.     *The Alleged Oral Agreement is not Unenforceable Under the Statute of Frauds*

Defendant argues that plaintiffs' first cause of action in the proposed Amended Complaint, which asserts a breach of contract claim, would be futile because the Agreement constitutes an unenforceable oral agreement. (Def.'s Opp'n at 13.) The New York Statute of Frauds provides that:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;
>
> 2. Is a special promise to answer for the debt, default or miscarriage of another person . . . .

N.Y. Gen. Oblig. Law § 5-701(a).

Defendant argues first that "the alleged unconditional personal guarantee was not performable within a year since the SBA Loan was a fifteen (15) year loan, and clearly the parties did not anticipate Defendant would be called upon immediately to pay the SBA Loan." (Def.'s Opp'n at 12-13.) In *Cron v. Hargro Fabrics*, 91 N.Y.2d 362 (1998), the New York Court of Appeals stated:

> We have long interpreted [Section 5-701(a)(1)] of the Statute of Frauds to encompass only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year. As long as the agreement may be fairly and reasonably interpreted such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame.

*Cron*, 91 N.Y.2d at 366-67 (internal citations omitted) (citing *D&N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455 (1984) (finding statute of frauds did not bar oral agreement when "there might be any possible means of performance within one year . . . in whatever manner and however impractical"); *Shirley Polykoff Adver., Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 922 (1978) (finding a contract "which by its terms [could] be performed within a year . . . would be without the statute [of frauds] even if, as a practical matter, it were well nigh impossible of performance within a year")).

Here, it cannot be said that there was "absolutely no possibility in fact and law of full performance [of the Agreement] within one year." *See Cron*, 91 N.Y.2d at 366. It is entirely possibly (even if unlikely) that, within one year of the Agreement, the "need" would arise that would trigger defendant's purported obligation to pay off the SBA Loan "so as to avoid any harm" to plaintiffs. (*See* Proposed Am. Compl. ¶ 10.)[2] Accordingly, because "it cannot be said that the [A]greement could not be performed within one year," *see Nakamura v. Fujii*, 677 N.Y.S.2d 113, 115 (1st Dep't 1998), Section 5-701(a)(1) of the Statute of Frauds does not bar the enforcement of the Agreement.

---

[2] This is especially true given the unconditional nature of defendant's alleged promise. Even if, however, defendant's promise to guarantee the SBA Loan was conditioned on certain events happening, such as Delta's default on its payments of the SBA Loan or an attempt by the SBA to foreclose on the mortgage, such events could possibly occur within one year of the Agreement.

7

Defendant also asserts that the Agreement constitutes a "special promise to answer for the debt, default or miscarriage of another person," *see* N.Y. Gen. Oblig. Law § 5-701(a)(2), and is not enforceable unless it was in writing. (Def.'s Opp'n at 13.) It is well-settled, however, that to fall within this provision of the Statute of Frauds, the purported "special promise" must be made to the creditor – not to the debtor himself. *See, e.g.*, *Schwartz v. Sayah*, 899 N.Y.S.2d 316, 318 (2d Dep't 2010) (finding that an alleged personal guarantee made by the defendant to the plaintiff, whereby he pledged to pay legal fees that a third party owed to the plaintiff, was required to be in writing pursuant to Section 5-701(a)(2)).[3] Because defendant's alleged promise to pay plaintiffs' debt to the SBA was made directly to plaintiffs (i.e., the debtors), as opposed to the SBA (i.e., the creditor), defendant's promise does not constitute a "special promise to answer for the debt, default or miscarriage of another person" within the meaning of the Statute of Frauds. *See Marriott Int'l, Inc. v. Downtown Athletic Club of N.Y. City, Inc.*, 2003 WL 21314056, at *4 (S.D.N.Y. June 9, 2003) ("To fall within New York's statute of frauds, a promise to pay a third party's debts must be made to the obligee. If the promise to pay is made direct[ly] to the principal rather than to the obligee, the statute does not apply . . . ."); *Steinberger v. Steinberger*, 676 N.Y.S.2d 210, 211 (2d Dep't 1998) (concluding that because the alleged promise "to be primarily liable on the mortgage obligation" was made directly to the debtor "rather than to the creditor bank, it was not a promise to answer for the debt of another within the meaning of the Statute of Frauds"); *Rosenheck v. Calcam Assocs. Inc.*, 649 N.Y.S.2d 247, 249 (3d Dep't 1996) ("[I]n a situation where a party's alleged promise to pay is made directly to the

---

[3] Because *Schwartz v. Sayah*, 899 N.Y.S.2d 316 (2d Dep't 2010) is factually distinguishable from this case, defendant's reliance upon it is unavailing. (*See* Def.'s Opp'n at 13.)

debtor rather than the creditor, it is clearly not a promise to pay the debt of a third party and thus does not fall within the meaning of the Statute of Frauds."). *See also Geller v. Esikoff*, 560 N.Y.S.2d 328, 330 (2d Dep't 1990); *G. Carver Rice, Inc. v. Crawford*, 444 N.Y.S.2d 748, 749 (3d Dep't 1981). Thus, the Agreement is not rendered unenforceable merely because it was unwritten.

> B.   *Plaintiffs' Breach of Contract Claim is Not Untimely*

Defendant also argues that any breach of contract claim plaintiffs might attempt to assert is barred by the six-year statute of limitations applicable to such claims in New York. (*See* Def.'s Opp'n at 15-16.) Defendant cites paragraph 16 of the Proposed Amended Complaint, which asserts that the Letter "memorialized the facts of the Agreement, [but] unilaterally attempted to place conditions on Simon Brenner's unconditional obligation therein." (*Id.* (citing Proposed Am. Compl. ¶ 16).) According to defendant, the "logical conclusion" to be drawn from this allegation is that plaintiffs are asserting "that Defendant breached his alleged unconditional oral promise by the writing of the Letter [ ] on June 9, 2003." (*Id.* at 16.) Because more than six years passed between the June 9, 2003 date of the Letter and the commencement of this action, defendant continues, plaintiffs' breach of contract claim is time-barred.

The Court disagrees. Taking the allegations in the Proposed Amended Complaint as true, plaintiffs have alleged that in December 2001 the parties entered into an oral agreement (i.e., the Agreement) pursuant to which defendant made an unconditional promise to pay off the SBA Loan if the need arose and in order to avoid any harm to plaintiffs. (*See* Proposed Am. Compl. ¶¶ 10, 11.) In or about June 2003, defendant "verbally reaffirmed the terms of the Agreement." (*Id.* ¶ 14.) The Letter, sent on June 9, 2003, constituted an attempt by defendant to modify the

9

terms of the parties' Agreement by imposing a new condition – namely, that defendant's obligation to indemnify plaintiffs would not be unconditional but would arise only upon the happening of certain events.  (*See id.* ¶¶ 15, 16.)  Plaintiffs rejected this attempted modification of the Agreement.  (*Id.* ¶ 16.)  Defendant has presented no legal authority for the proposition that, under these circumstances, defendant's attempted modification of the Agreement constituted a breach of that Agreement.

      *C.*      *Conclusion*

Defendants do not raise any further objections to the merits of the breach of contract claim asserted in the First Cause of Action of the Proposed Amended Complaint.  Accordingly, having found that this claim is not barred by either the statute of frauds or statute of limitations, plaintiffs' breach of contract claim would not be futile.  Plaintiffs' motion to amend their pleading to assert their breach of contract claim is granted.

*III.*    *Plaintiffs' Unjust Enrichment Claim*

Unjust enrichment is a "quasi-contractual remedy that the law provides where a contractual relationship has legally failed." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 210 (S.D.N.Y. 2008) (citing *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Dayton Superior Corp. v. Marjam Supply Co.*, 2011 WL 990300, at *9 (E.D.N.Y. Feb. 22, 2011) (quoting *Beth Israel*, 448 F.3d at 586) (internal quotation marks omitted).

"The 'essence' of [an unjust enrichment] claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 685 N.Y.S.2d 381, 381 (4th Dep't 1999)). To support an unjust enrichment claim a plaintiff must "establish [a] specific and direct benefit" moving from the plaintiff to the defendant. *Id.*; *see also M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) ("It is not sufficient for defendant to receive some indirect benefit – the benefit received must be 'specific and direct' to support an unjust enrichment claim.")

Plaintiffs' unjust enrichment claim centers around two benefits they allegedly conferred to defendant. First, plaintiffs assert that their act of mortgaging their home to secure the SBA Loan benefitted defendant "as it permitted Delta to continue operating its business, which was to the benefit of [defendant] as he wanted to pass down the family business to his son Dean, and said loan enabled [defendant and his son] to continue to operate Delta and receive compensation and reimbursement of personal expenses from Delta." (Proposed Am. Compl. ¶ 34.) This is not the sort of "specific and direct benefit necessary to support an unjust enrichment claim." *Kaye*, 202 F.3d at 616. The benefit of plaintiffs' mortgaging their home to secure the SBA Loan went directly to Delta by permitting corporation's continued existence. *See M+J Savitt, Inc.*, 2009 WL 691278 at *10 (finding that the benefit of plaintiff's substantial loan to the corporation went directly to the corporation, and not to the defendant-owner of the company). Even if defendant received some indirect benefit from plaintiffs' act of securing the SBA Loan, (i.e., defendant continued to receive compensation from Delta and had renewed hopes of passing down a "family business" to his son), such indirect benefits alone cannot sustain a claim for unjust enrichment. *See Kaye*, 202 F.3d at 616 (finding defendant did not directly benefit from a loan made to her

11

husband; she received only indirect benefits in that some of the loan money was "lent to the family" and used to pay her daughter's college tuition).

Plaintiffs also allege that defendant received a benefit when plaintiffs paid off the SBA Loan in 2010. (Proposed Am. Compl. ¶ 35.) Plaintiff alleges that defendant, along with William and Dean Brenner, "executed the SBA Loan Note" "as President of Delta." (*Id.* ¶ 12.) Although plaintiffs do not expand upon this point, the Court presumes that the argument would be that defendant was benefitted when plaintiffs paid off a loan for which defendant might otherwise be responsible for paying. This argument is ultimately unavailing because plaintiff has not made any allegation or argument that defendant, who signed the SBA Loan Note as President of the Delta, would be personally liable for the SBA Loan made to Delta – a corporate entity. There is no allegation, for example, that defendant also executed a personal guarantee securing the SBA Loan Note. *Accord United States v. Ehrlich*, 1999 WL 294739, at *1 (E.D.N.Y. Mar. 18, 1999) (finding corporation's president and secretary personally liable to the SBA for amounts loaned to their corporation when they signed a personal guarantee securing the promissory note). Because plaintiffs have failed to allege that their payoff of the SBA Loan constituted a direct benefit flowing to defendant, they cannot maintain an unjust enrichment claim.

Accordingly, plaintiffs' motion to amend their pleading to assert a claim for unjust enrichment is denied as futile.

### IV.    *Plaintiffs' Promissory Estoppel Claim*

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye*, 202

F.3d at 615 (citing *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996)). Here, the allegations in plaintiffs' Proposed Amended Complaint satisfy each of these elements. Plaintiffs assert that Simon clearly and unambiguously promised to pay off the SBA Loan if the need arose to avoid any financial harm to plaintiffs. In turn, plaintiffs, who initially declined to mortgage their home, changed their minds in reliance on this promise. Plaintiffs have sufficiently alleged that they suffered a resulting injury.

Defendant argues[4] that plaintiffs may not assert a promissory estoppel claim "where, as in the instant case, a contract allegedly governs the subject matter of the action." (Def.'s Opp'n at 19.) "A promissory estoppel claim may proceed jointly with a breach of contract claim only where it is not clear that a valid contract exists." *BLD Prods., LLC v. Viacom, Inc.*, 2011 WL 1327340, at *15 (S.D.N.Y. Mar. 31, 2011). In this case, the existence and contours of any agreement between the parties as to defendant's indemnification obligation will be hotly contested. (*See* Def.'s Opp'n at 9 (contending that discovery conducted thus far has "failed to reveal any evidence of an unconditional oral promise from Simon Brenner"); Reply at 4 (asserting plaintiffs' expectation that forthcoming deposition testimony will evidence that "Defendant never placed any conditions on his initial guarantee at the most critical time").) Because defendant has denied that the parties entered into a "valid enforceable contract" with respect to defendant's unconditional obligation to guarantee the SBA Loan, plaintiffs are "entitled to plead the alternative theory of promissory estoppel in the event it is later determined

---

[4] Defendant also argues that plaintiffs' motion to amend their pleading to assert a promissory estoppel claim should be denied as futile because any promissory estoppel claim would be barred by the Statute of Frauds. (Def.'s Opp'n at 14.) As set forth above, defendant's alleged promise to guarantee the SBA Loan does not fall within the Statute of Frauds.

there is no enforceable contract." *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, 2006 WL 903184, at *3 (S.D.N.Y. Apr. 7, 2006).

V.      *Defendant's Allegations of Bad Faith*

Finally, defendant contends that plaintiffs' motion to amend should be denied because certain "direct contradictions" between the allegations made in the original Complaint and the Proposed Amended Complaint evidence plaintiffs' "bad faith." (*See* Def.'s Opp'n at 5-6.) Defendant argues that while the original Complaint described the Letter as "being a memorialization of the agreement" between the parties, plaintiffs now claim in the Proposed Amended Complaint that the Letter was actually "an attempt by Defendant to place restrictions upon his prior unconditional oral promise to Plaintiffs to guarantee payment of the SBA Loan." (Def.'s Opp'n at 6.)

While the Proposed Amended Complaint certainly contains new factual allegations not contained in the original pleading, the Court does not agree with defendant's assertion that plaintiffs' new allegations "are in direct contradiction [to] the facts as [pled] by Plaintiffs in the Original Complaint." (*See id.* at 8.) In plaintiffs' legal memoranda opposing defendant's motion to dismiss the original Complaint, plaintiffs strenuously asserted that they had always intended to allege that defendant's promise was unconditional. (*See* Sept. 22, 2011 Order at 7.) The Court concluded that, despite counsel's arguments regarding what was intended to be pled in the Complaint, the actual allegations in the Complaint did not make clear the unconditional nature of defendant's promise. Plaintiffs' proposed amendments to the Complaint make this assertion clearer. The Court is not willing, at this juncture, to equate plaintiffs' attempt to clarify their allegations with a showing of bad faith that would warrant the denial of their motion to amend.

14

Finally, defendant's arguments that the documents produced during discovery thus far "failed to reveal any evidence [beyond plaintiffs' assertions] of an unconditional oral promise from Simon Brenner" are more appropriately made as part of a motion for summary judgment.  (*See* Def.'s Opp'n at 9.)

## *CONCLUSION*

For the reasons set forth above, plaintiffs' motion to amend the Complaint is granted in part and denied in part.  Plaintiffs' motion is granted to the extent that they will be permitted to assert the breach of contract and promissory estoppel claims set forth in the Proposed Amended Complaint.  Plaintiffs' motion is denied, however, to the extent that their proposed cause of action for unjust enrichment would be futile.

Plaintiffs are directed to file and serve an Amended Complaint that conforms to the Court's rulings as set forth in this Memorandum & Order within thirty days of the date of this Order.

**SO ORDERED.**

Dated:  Central Islip, New York
       August 20, 2012                                   /s/
                                                                                    Denis R. Hurley
                                                                                    Unites States District Judge